IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LADANEA ELKINS                                                                          PLAINTIFF

v.                                              4:07CV01229 JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                                 DEFENDANT

**MEMORANDUM AND ORDER**

Plaintiff, Ladanea Elkins, has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have submitted Appeal Briefs (docket entries #10 and #11), and the issues are now joined and ready for disposition.[1]

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[2] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge. (Docket entry #4.)

[2] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382a(3)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) & 1382a(C)(I).

On her application for DIB and SSI,[3] Plaintiff alleged that she was limited in her ability to work by bipolar disorder, mood disorders, suicidal tendencies, and back problems. (Tr. 145.) After conducting an administrative hearing, during which Plaintiff and a vocational expert testified, the Administrative Law Judge ("ALJ") concluded that Plaintiff had not been under a disability, within the meaning of the Social Security Act, at any time through March 28, 2007, the date of the decision. (Tr. 25.)

On November 27, 2007, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision; thereby making it the final decision of the Commissioner. (Tr. 4-6.) Plaintiff then filed her Complaint initiating this appeal. (Docket entry #2.)

Plaintiff was 42 years old at the time of the administrative hearing. (Tr. 492.) She is a high school graduate in special education courses.[4] (Tr. 105, 492.) She has past relevant work as a hand packer and poultry laborer. (Tr. 13, 94-95, 109, 138-39, 146-47, 163.)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i) (2005), §416.920. If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. *Id.*, §

---

[3]Plaintiff has filed two previous applications. (Tr. 12.)

[4]On one form, she checked a box indicating that she was not in special education courses. (Tr. 114.)

404.1520(b), § 416.920.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. *Id.*, § 404.1520(4)(ii), § 416.920. If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(a)(iii), § 416.920.[5] If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 404.1520(4)(iv), § 416.920. If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(4)(v), § 416.920. If so, benefits are denied; if not, benefits are awarded. *Id.*

The ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since her alleged onset date (Tr. 14); (2) had "severe" impairments (*id.*); (3) did not have an impairment or combination of impairments that met or equaled a Listing (*id.*); (4) was not totally credible in her subjective allegations (Tr. 14-23); (5) retained the RFC for a wide range of medium work (Tr. 23); and (6) was able to perform her past relevant work as a hand packer.[6] (Tr. 23-24.) Thus, the ALJ concluded that Plaintiff was not disabled. (Tr. 24.) )

Plaintiff contends that the ALJ erred because: (1) her decision was not supported by substantial evidence; and (2) she failed to consider the vocational expert's testimony in making her

---

[5] If the claimant's impairments do not meet or equal a Listing, then the ALJ must determine the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence. *Id.*, § 404.1520(e). This RFC is then used by the ALJ in his analysis at Steps 4 or 5. *Id.*

[6] As indicated previously, the ALJ heard testimony from a vocational expert, who responded to a series of hypothetical questions posed by the ALJ. (Tr. 23-24, 516-19.)

decision. The Court will address each of these arguments separately.

First, Plaintiff argues that the ALJ's decision was not supported by substantial evidence because she misconstrued one of the treatment notes of Glenn T. Brothers, D.O., one of Plaintiff's treating physicians (Tr. 250-73, 346-61, 385-97, 429-47). (*Pltff's App. Br.* at 4-10.) According to Plaintiff, this error is contained in the following portion of the ALJ's decision:

> Dr. Brothers requested blood work[-]up to recheck for rheumatoid factor, ANA, and CBC. Treatment records do not show the results of this work[-]up; however, Dr. Brothers noted that he would refer the claimant to a rheumatologist if the results warranted further work[-]up. It can only be assumed the results were negative as no referral was made (Ex 20F).

(*Pltff's App. Br.* at 7, Tr. 20.)

Plaintiff argues that Dr. Brothers, in fact, *did refer* Plaintiff to a rheumatologist, Ellen Lipsmeyer, M.D. (*Pltff's App. Br.* at 7-8, Tr. 257.) Thus, she contends that the ALJ erred in concluding that the blood work was "negative" because Plaintiff was not subsequently referred to a rheumatologist. Suffice it to say, Plaintiff's argument finds *no support* in the record.

Plaintiff saw Dr. Brothers on May 31, 2005, and he noted that, depending on the results of the blood work, he would refer claimant to a rheumatologist. (Tr. 396.) Over one year *earlier*, on February 9, 2004, Dr. Brothers notes that Plaintiff "has a follow-up with rheumatologist Dr. Lipsmeyer on 2-25-04." (Tr. 257.) In her Appeal Brief (docket entry #10), Plaintiff cites Dr. Brothers' treatment notes on February 9, 2004 (Tr. 257), as evidence that she saw a rheumatologist for a follow-up after her appointment with Dr. Brothers on *May 31, 2005*. (*Pltff's App. Br.* at 8.) Such is simply not the case. Following Plaintiff's appointment with Dr. Brothers on May 31, 2005, nothing in the record suggests that she was referred to see Dr. Lipsmeyer or any other rheumatologist. Thus, the quoted language from the ALJ's decision is accurate, *i.e.*, the ALJ correctly noted that the record contains no evidence that Plaintiff was referred to a rheumatologist after her May 31, 2005 appointment with Dr. Brothers.

In the same vein, Plaintiff contends that the medical record does not support the ALJ's conclusion that, while "[t]he claimant has made complaints of bilateral knee pain, wrist pain, and shoulder pain, there is no work[-]up or treatment to indicate these allegations are nothing more than occasional complaints and

discomforts, which are short-lived." (*Pltff's App. Br.* at 8, Tr. 21.)  To support this argument, Plaintiff cites two pages of the medical record showing that she received treatment for knee pain (Tr. 253) and wrist pain (Tr. 354). (*Pltff's App. Br.* at 8.)  According to Plaintiff, this shows that the ALJ did not take all the medical evidence into consideration in making her decision.  To the contrary, the fact that Plaintiff cites only one complaint of knee pain and one complaint of wrist pain *supports* the ALJ's conclusion that these were nothing more than occasional complaints which were short-lived.  Thus, the Court also concludes that this argument lacks merit.

Second, Plaintiff contends that the ALJ did not take the vocational expert's testimony into consideration in making her decision. (*Pltff's App. Br.* at 10-12.)  In her decision, the ALJ makes it clear that she has considered the testimony of the vocational expert. (Tr. 23-24.)  However, even if she had not considered that testimony, this argument would be without merit.  The ALJ made her decision at *Step 4* of the sequential evaluation process. *Id.* Testimony of a vocational expert is not required at Step 4.  Rather, an ALJ is only required to consider such testimony at Step 5, when the burden shifts to the Commissioner, *and* a claimant has a nonexertional impairment. *Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001); *Johnston v. Shalala*, 42 F.3d 448, 452 (8th Cir. 1994).

It is not the task of this Court to review the evidence and make an independent decision.  Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.  The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also, Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004).  The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is hereby affirmed and Plaintiff's Complaint is hereby dismissed, with prejudice.

DATED this 29th day of July, 2009.

_____
UNITED STATES MAGISTRATE JUDGE